UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RAQUEL HAYDEL, AMBER BENEFIELD, RUBY MOONEY, CASEY TURNER, and STACI KNIGHT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>V.<br><br>CHG EMPLOYEE HOLDING LLC and CORNERSTONE HEALTHCARE GROUP HOLDING, INC.,<br><br>Defendants. | CIVIL ACTION NO. 4:18-cv-2266<br><br><br>JURY TRIAL DEMANDED |

PLAINTIFFS' ORIGINAL COMPLAINT -
216(b) COLLECTIVE ACTION & RULE 23 CLASS ACTION

I. SUMMARY

1. Plaintiffs Raquel Haydel, Amber Benefield, Ruby Mooney, Casey Turner, and Staci Knight bring this suit as a collective action under the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA" or "the Act"), and as a Rule 23 class action asserting state law claims for unpaid straight-time compensation owed at a contractual hourly rate, on their own behalf and on behalf of the members of the proposed classes defined in Paragraph 4 below. Plaintiffs and class members worked as hourly paid Licensed Vocational Nurses ("LVN"), hourly paid Registered Nurses ("RN"), hourly paid Certified Medical Assistants ("CMA"), and as other hourly paid nurses, such as but not limited to, Certified Nurse Assistants ("CNA") and Licensed Practical Nurses ("LPN") (collectively referred to as "nurses" and/or "direct patient care nurses") at various medical facilities located nationwide, which are owned and operated by Defendants CHG Employee Holding LLC and Cornerstone Healthcare Group Holding, Inc. (Defendants'

medical facilities are hereinafter collectively referred to as "Cornerstone").[1] For purposes of this lawsuit, Defendants are "joint employers" as that term is defined under the FLSA. Plaintiffs and class members did not receive bona fide meal break periods. Instead, they were required and permitted to work off-the-clock for Defendants during their meal break periods and were not paid for such time.

2. An employer is not required to pay an employee for meal periods if the employer can satisfy its burden of showing that the employee received a bona fide meal period. However, Defendants required nurses at Cornerstone to remain responsible for patient care throughout their shifts, including during meal periods. Nurses frequently went without meals, and even when they did attempt to eat, their meal periods were regularly interrupted by work demands. In short, Defendants used the nurses' meal periods for the predominant benefit of Cornerstone. Notwithstanding Defendants' practice of requiring nurses to be available for work and to in fact work throughout their meal periods, Defendants employed timekeeping software which automatically deducted thirty (30) minutes from the total time worked by nurses each shift so as to account for these hypothetical meal periods, thereby enabling Defendants to receive the benefit of an additional thirty minutes of unpaid work for each shift worked by class members.

3. Defendants' practice of failing to relieve nurses of their duties during meal periods, while simultaneously using timekeeping software to automatically deduct thirty minutes from the total time paid per shift (on the pretext of accounting for meal periods which nurses were not in fact free to take without constant interruption), had the effect of depriving nurses of overtime compensation due to them under the FLSA in the weeks in which they worked more than forty (40) hours in a week, and of depriving them of straight-time compensation at their contractual

---

[1] http://chghospitals.com/locations/.

hourly rate in weeks in which they worked fewer than forty (40) hours in a week. On information and belief, all of Cornerstone's non-exempt, direct patient care nurses were subjected to these illegal pay practices.

4. Plaintiffs bring this suit under the collective action provisions of the FLSA because they and the putative class members are similarly situated under the FLSA in the following particulars: (a) they are or were hourly-paid direct patient care nurses subject to Defendants' medical facility-wide policy of automatic pay deductions for meal periods; (b) they are and were required and permitted to be available to perform uncompensated work during those meal periods, and in fact did perform uncompensated work during those periods; (c) the meal periods are and were predominantly for the benefit of Defendants; and (d) Plaintiffs and class members suffered overtime wage losses as a result of Defendants' failure to pay wages at the federally required overtime rate for these thirty minutes meal periods in the weeks in which the nurses worked more than forty hours in a week.

5. In addition to the FLSA collective action claims, Plaintiffs bring this action as Rule 23 class actions under state law in each state where Defendants operated because they and the class members are similarly situated in the following particulars: (a) Plaintiffs and class members are or were hourly-paid direct patient care nurses who entered into employment agreements with Defendants pursuant to which Defendants promised to pay a specified hourly rate of pay for each and every hour worked by said nurses; (b) Defendants breached the employment agreements by failing to pay Plaintiffs and class members the agreed rate for all hours worked, specifically, by failing to pay for meal period work at the agreed hourly rate in the weeks in which class members worked 40 or fewer hours; (c) the mechanism by which Defendants shorted Plaintiffs and class members of their pay was by the use of timekeeping software to deduct thirty minutes from each shift worked by class members for a supposed "meal break" despite regularly requiring and

3

permitting the nurses to perform compensable work during the unpaid "meal break"; and (d) Plaintiffs and class members do not and did not receive pay for such "meal break work" and were damaged thereby.

6. Accordingly, Plaintiffs are similarly situated to the following classes of employees:

**FLSA Class:**

**Nurses employed at all Cornerstone locations nationwide to provide direct patient care at any time during the three years before this Complaint was filed up to the present who, as a result of Defendants' practice of automatically deducting 30 minutes from each shift worked and not paying for same, did not receive all of the overtime pay to which they were entitled under the FLSA in the weeks of their employment in which said nurses worked more than forty (40) hours per week.**

**Rule 23 Classes:**

**Nurses employed at all Cornerstone Arizona, Arkansas, Louisiana, Oklahoma, Texas, West Virginia, and Tennessee locations to provide direct patient care at any time during each states' applicable common law statutory period before this Complaint was filed up to the present who, as a result of Defendants' practice of automatically deducting 30 minutes from each shift worked and not paying for same, did not receive all of the straight time pay at their contractual hourly rate to which they were entitled in the weeks of their employment in which said nurses worked forty (40) or fewer hours per week.**

## II. SUBJECT MATTER JURISDICTION & VENUE

7. This Court has jurisdiction over the FLSA claims under 29 U S.C. § 216 et seq. and 28 U.S.C. § 1331.

8. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts, namely, the loss of wages suffered by Plaintiffs and class members as a result of Defendants' policy of automatically deducting 30 minutes of meal break time from shifts worked while simultaneously requiring and permitting Plaintiffs and class members to work during said meal break time.

9. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391(b) because Defendants operate Cornerstone in the Southern District of Texas, and because the events giving rise to these claims occurred in this judicial district.

### III. PARTIES & PERSONAL JURISDICTION

10. Plaintiff Raquel Haydel is an individual residing in Montgomery County, Texas. Plaintiff's written consent to be a party to this action is attached as Exhibit "1" to this Complaint.

11. Plaintiff Amber Benefield is an individual residing in Pima County, Arizona. Plaintiff's written consent to be a party to this action is attached as Exhibit "2" to this Complaint.

12. Plaintiff Ruby Mooney is an individual residing in Bossier Parish, Louisiana. Plaintiff's written consent to be a party to this action is attached as Exhibit "3" to this Complaint.

13. Plaintiff Casey Turner is an individual residing in Sebastian County, Arkansas. Plaintiff's written consent to be a party to this action is attached as Exhibit "4" to this Complaint.

14. Plaintiff Staci Knight is an individual residing in Cabell County, West Virginia. Plaintiff's written consent to be a party to this action is attached as Exhibit "5" to this Complaint.

15. Class Members are all of Defendants' current and former hourly-paid, direct patient care nurses who work or worked at all Cornerstone locations nationwide during the time periods material to this suit, and who are due unpaid regular and/or overtime wages for compensable work performed during unpaid "meal breaks" as a result of Defendants' use of timekeeping software which deducted thirty minutes of time from each shift worked by class members.

16. Defendant CHG Employee Holding, LLC is a Texas limited liability company which jointly operates Cornerstone. Defendant's registered agent for service of process is CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

17. Defendant Cornerstone Healthcare Group Holding, Inc. is a Delaware corporation doing business in Texas which jointly operates Cornerstone. Defendant's registered agent for

service of process is CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136. Defendant at all times relevant to this action has had sufficient minimum contacts with the State of Texas to confer personal jurisdiction upon it by this Court. Defendant conducts business throughout Texas. Furthermore, Defendant contracted with and employed Texas residents, like Plaintiffs and Class Members, to conduct its business in Texas.

## IV. FLSA COVERAGE

18. At all material times, Defendants have been employers within the meaning of Section 203(d) of the FLSA because they employed personnel such as Plaintiffs and Class Members to operate Cornerstone. Plaintiffs and Class Members worked exclusively for and under the sole direction and control of Defendants and for Defendants' financial gain. Plaintiffs and Class Members are nurses whose services are integral to the medical care business which Defendants operate. Plaintiff and Class Members are economically dependent on Defendants' business: without nurses Defendants cannot operate Cornerstone / without a medical facility like Cornerstone Plaintiffs do not have access to medical equipment, facilities and patients to earn a living. Plaintiffs and Class Members are classified as W-2 employees of Defendants.

19. At all material times, Defendants have been a "single enterprise" within the meaning of Section 203(r) of the FLSA because they have acted through unified operation and common control to further their common purpose of operating Cornerstone.

20. At all material times, Defendants have been an enterprise in commerce within the meaning of Section 203(s)(1)(A) of the FLSA ("Traditional Enterprise Coverage") because:

    i)    Defendants have had and continue to have employees engaged in commerce or in the production of goods for commerce, or have had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person. By way of example and not by limitation, as a part of

6

        their work, Plaintiffs and/or Defendants' employees used food and medical equipment that was manufactured and shipped across state lines; used computers, office supplies, medical equipment, and telecommunications equipment that were manufactured and shipped across state lines; used the interstate telephone system, landline and cellular, and internet across state lines; banked with institutions across state lines; and ordered medical supplies from out of state.

ii)    Defendants have had, individually and collectively, an annual gross business volume in excess of $500,000 per year. Based on information and belief, Defendants' occupancy at all its facilities are close to or at full capacity each month resulting in gross business volumes well in excess of a million dollars a year.

21.    At all material times, Defendants have been an enterprise in commerce within the meaning of Section 203(s)(1)(B) of the FLSA ("Named Enterprise Coverage") because:

i)    Defendant is engaged in the operation of an institution primarily engaged in the care of the sick and the aged. Specifically, Defendants offer a full continuum of care, which include specialty hospitals, senior living, and behavioral health. Because Defendants operate an institution primarily engaged in the care of the sick and elderly it is per se an "enterprise in commerce" pursuant to Section 203(s)(1)(B).

22.    At all material times, Plaintiffs were individual employees who engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207(a)(2)(C) ("Individual Coverage") because Plaintiffs had direct and substantial involvement with interstate commerce in ways which were regular, recurring, and a substantial part of their work. By way of example and not by limitation, Plaintiffs incorporate the examples listed above in paragraph 20(i) of this complaint.

## V. FACTUAL BACKGROUND

23.     Defendants operate Cornerstone Healthcare Group ("Cornerstone") medical facilities throughout the country.[2] Cornerstone provides three services: Specialty Hospitals, Senior Living, and Behavioral Health. *Id*. Cornerstone offers 18 hospitals nationwide that provide care for patients in need of extended medical stay due to multiple and complex medical conditions. Defendants' specialty hospitals offer 24/7 physician coverage, multiple physician specialties, physical rehabilitation services and other medical services. Defendants also offer senior living communities for long term 24/7 medical care tailored to the medical needs of senior citizens living at its 8 available communities. To provide continuous medical services to its patients, Cornerstone employs thousands of medical professionals and staff. Based on information and belief, Cornerstone has employed more than approximately 1,000 nurses during the applicable FLSA 3-year period and even more during the applicable common law periods applicable to each state.

24.     Plaintiff Raquel Haydel is a LVN who worked for Cornerstone in Conroe, Texas from approximately 8/10/10 – 3/23/18. On or about 8/10/10, she agreed to provide her services as a LVN in exchange for Defendants' agreement to compensate her at a specified hourly rate for each of her hours worked. On information and belief, the agreed hourly rate was approximately $27 per hour.

25.     Plaintiff Amber Benefield is a RN who has worked for Cornerstone in Tucson, Arizona from approximately 10/6/16 - present.  On or about 10/6/16, she agreed to provide her services as a RN in exchange for Defendants' agreement to compensate her at a specified hourly rate for each of her hours worked. On information and belief, the agreed hourly rate was approximately $35 per hour.

---

[2]     http://chghospitals.com/locations/.

8

26. Plaintiff Ruby Mooney is a LVN who has worked for Cornerstone in Bossier City, Louisiana from approximately 12/2016 - present. On or about 2016, she agreed to provide her services as a LVN in exchange for Defendants' agreement to compensate her at a specified hourly rate for each of her hours worked. On information and belief, the agreed hourly rate was approximately $22 per hour.

27. Plaintiff Casey Turner is a CMA who has worked for Cornerstone in Muskogee, Oklahoma from approximately 11/2015 - present. On or about 2015, she agreed to provide her services as a CMA in exchange for Defendants' agreement to compensate her at a specified hourly rate for each of her hours worked. On information and belief, the agreed hourly rate was approximately $25 per hour.

28. Plaintiff Staci Knight is a RN who has worked for Cornerstone in West Virginia. She agreed to provide her services as a RN in exchange for Defendants' agreement to compensate her at a specified hourly rate for each of her hours worked.

29. Plaintiffs and class members are regularly scheduled to work numerous shifts per week at Cornerstone. However, Plaintiffs and the class members have the option to pick up additional shifts, and frequently do so. In Plaintiffs' case, they routinely pick up additional shifts per week. Accordingly, Plaintiffs and class members regularly work more than 40 hours per week at Cornerstone.

30. Plaintiffs allege that in each and every week of their employment, **and as a result of a common policy equally applicable to them and to every member of the class,** Defendants (a) failed to pay them the agreed hourly rate for some of their work performed in those weeks in which they worked forty (40) or fewer hours; and (b) failed to pay them at the time-and-one-half overtime rate required by federal law for some of their work performed in those weeks in which

they worked more than forty (40) hours in a week. Specifically, they were not compensated at any rate whatsoever for thirty minutes of each of their shifts worked.

### Off-the-clock work: Uncompensated work during meal breaks.

31. Cornerstone generated its payroll documentation for Plaintiffs and class members by using time keeping software. The timekeeping software was configured to deduct thirty minutes of time from each shift worked by the nurses. Each pay period, the amount of time tracked by the software, after deduction of thirty minutes per shift, was uploaded for processing into the payroll processing software.

32. All of Cornerstone's hourly-paid direct patient care nurses are and were subject to Defendants' policy to automatically deduct thirty minutes per shift from the recorded time worked.

33. Plaintiffs anticipate that Defendants may attempt to argue that the thirty minute deductions from each shift worked were warranted so as to account for uninterrupted thirty minute lunch breaks during which no work was performed and for which no compensation is owed. In point of fact, however, Plaintiffs and their nurse colleagues routinely worked through their lunch breaks, and even when they did manage to spend a few minutes eating, that time was regularly interrupted by other nurses on duty, nurse managers, doctors, patients' families, and other Cornerstone staff.

34. Defendants are and were familiar with the demands of the health care industry in general and of providing medical services at Cornerstone in specific, and they deliberately chose to keep their labor costs down by staffing an insufficient number of personnel per shift. Rather than hiring and staffing a sufficient number of nurses per shift to allow the nurses to take full, uninterrupted meal breaks, Defendants required and permitted these overworked nurses to work during their meal breaks for the benefit of Defendants. Defendants knew and expected that Plaintiffs and class members would work through their unpaid "meal breaks," and this was in fact

a daily occurrence at Cornerstone. Defendants' supervisors and management routinely interrupted the meal breaks of Plaintiffs and class members and made work demands upon them. Defendants' supervisors and management were actively involved in scheduling the shifts worked by Plaintiffs and the class, and they had actual knowledge that their staffing and work policies were causing Plaintiffs and class members to work through meal breaks to the predominant benefit of Defendants.

35. Plaintiffs and class members were not only required to remain at Cornerstone during their shifts, including during the supposed "meal breaks," they were expected to remain on their assigned floors/hallways so as to be able to respond to patient care needs at all times. Plaintiffs and class members were also required to respond to emergency calls at all times, including during any supposed "meal break." In short, far from ensuring that Plaintiffs and class members were completely relieved of work duties during the supposed "meal breaks," Defendants expected and required Plaintiffs and class members to attend to work demands throughout their shifts, including during any "meal break."

36. In that connection, Plaintiffs and class members were expected to complete orders on assigned patients, to answer calls, to respond to medical emergencies, to advise other staff on patient care and status issues, to answer questions from Cornerstone staff or family members, and in general to respond immediately to work demands during "meal breaks."

37. Defendants knew and/or had reason to know that Plaintiffs and class members performed work during their unpaid "meal breaks," as evidenced by Defendants requiring Plaintiffs and class members to remain at Cornerstone and on their assigned floors/hallways during their shifts so as to be available to respond to work demands at any time during the shift, including during meal breaks. Moreover, Plaintiffs and class members performed work for Defendants

during the unpaid meal breaks in plain sight of Defendants' management, quite often at Defendants' management's specific request.

38. Despite Defendants' actual knowledge that Plaintiffs and other class members worked during supposed "meal breaks," Defendants willfully failed to compensate Plaintiffs and class members for such work, electing instead to accept the benefits of the class members' work without compensating them for such work.

39. Given that Defendants' supervisors and managers knew from direct observation and from their general knowledge of Cornerstone's operations that Plaintiffs and class members (a) regularly worked through the deducted meal break time without compensation; and (b) regularly accumulated overtime hours even after deduction of the uncompensated thirty minutes per shift (as evidenced by the fact that Cornerstone paid for overtime that still appeared in the timekeeping records even after deduction of the thirty minutes per shift), Defendants had both actual and constructive knowledge that Plaintiffs and class members were not being compensated for meal periods worked at any rate whatsoever, much less at the agreed hourly rate or at the federally mandated time-and-one-half rate required for overtime.

<u>Calculation of damages.</u>

40. Evidence reflecting the number of uncompensated meal break hours worked by each class member, as well as their applicable regular and overtime rate, is in the possession of Defendants. Actual damages can be calculated easily once Defendants have produced complete payroll records for the class. The absence of a bona fide meal break makes all unpaid meal break time compensable, and all that remains is to establish the number of shifts worked by class members in the weeks in which they worked more than 40 hours, and the number of shifts worked in which they worked fewer than 40 hours. Each shift worked will entitle class members to half an hour of pay (depending on the meal break deduction length) at either their usual hourly rate or at

their time-and-one-half rate, depending upon whether the week in question is one in which forty or fewer hours were worked, or one in which forty or more hours were worked. The information needed to calculate damages—specifically the dates of the shifts worked, the total number of hours worked per week, and the base hourly rate of pay for each worker—exists right now in Defendants' timekeeping and payroll databases. The damage calculation itself will be a straightforward accounting process.

## VI. COLLECTIVE ACTION ALLEGATIONS
### VIOLATION OF 29 U.S.C. § 207 - OVERTIME

41. Plaintiffs incorporate all allegations contained in the foregoing paragraphs.

42. Pursuant to 29 U.S.C. § 216(b), Plaintiffs seek to prosecute their FLSA claims as a collective action on behalf of the members of the putative class.

43. The action is filed on behalf of all of Defendants' hourly-paid direct patient care nurses who worked at all Cornerstone locations during the three years preceding the filing of this action through entry of judgment in this case, whose overtime pay was docked pursuant to an automatic meal break deduction policy notwithstanding the fact that the nurses performed compensable work during the supposed meal break periods (the "FLSA Class").

44. This FLSA Class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is currently unknown to Plaintiffs, and although the data which would identify the size of the FLSA Class is within the sole control of Defendants, upon information and belief there are thousands of nurses encompassed by the class, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

45. Plaintiffs will fairly and adequately protect the interests of the FLSA Class members and have retained counsel experienced and competent in the field of wage and hour law

and class action litigation. Plaintiffs have no interest that is contrary to or in conflict with the interests of the members of the FLSA Class.

46. A collective action is superior to individual adjudication of the claims at issue in this controversy, since the claims are substantially similar and since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual members of the class may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the class to seek redress individually for the wrongs done to them. Management of the suit as a collective action will serve judicial economy.

47. Questions of law and fact common to the FLSA Class members predominate over questions that may affect only individuals because Defendants have acted on grounds generally applicable to all FLSA Class members. Among the common questions of law and fact common to Plaintiffs and other collective action class members are:

   a. whether Defendants employed class members in the manner that "employment" is understood and defined by the FLSA;

   b. whether Plaintiffs and the FLSA Class members were expected to and/or required to work during unpaid meal breaks, and in fact did so;

   c. Whether Defendants' control of the conditions of the "meal break" was for the predominant benefit of Cornerstone and whether it made such time compensable as a matter of law;

   d. whether Defendants failed to pay Plaintiffs and the FLSA Class members overtime compensation for some of their hours worked in excess of forty hours per workweek in violation of the FLSA, as a result of Defendants' automatic deduction of, and failure to pay for, half an hour or one hour meal break periods in each shift worked in weeks in which overtime hours were otherwise worked;

   e. whether Defendants' violations of the FLSA were willful as that term is understood in the context of the FLSA; and

   f. whether Defendants are liable for damages claimed hereunder, including but not limited to unpaid overtime wages, liquidated damages, attorneys' fees and costs.

48. Plaintiffs know of no difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a collective action.

49. The FLSA 216(b) collective action class may be defined as:

**Nurses employed at all Cornerstone nationwide locations to provide direct patient care at any time during the three years before this Complaint was filed up to the present who, as a result of Defendants' practice of automatically deducting half-an-hour from each shift worked and not paying for same, did not receive all of the overtime pay to which they were entitled under the FLSA in the weeks of their employment in which said nurses worked more than forty (40) hours per week.**

## VII. STATE LAW CLASS ACTIONS ALLEGATION [3]

50. Plaintiffs incorporate all allegations contained in the foregoing paragraphs.

51. Pursuant to Fed.R.Civ.P. 23(a), (b)(2) and (b)(3) and 28 U.S.C. § 1367, Plaintiffs seek to prosecute their state claims for breach of contract, quantum meruit and unjust enrichment as a class action on behalf of all hourly-paid direct patient care nurses who worked at Cornerstone at any time during the preceding state-specific applicable time period before the filing of this action through entry of judgment whose pay has been docked by application of an automatic meal break deduction to their shifts worked in the weeks in which they did not work overtime (the "Rule 23 Classes").

52. This Rule 23 Classes are so numerous that joinder of all members is impracticable. Although the precise number of such persons is currently unknown to Plaintiffs, and although the data which would identify the sizes of the Rule 23 Classes is within the sole control of Defendants, upon information and belief there are thousands of nurses encompassed by the classes, most of

---

[3] Plaintiffs seek a Rule 23 class for every state (each state is subject to its common law) where Defendants operate: Arizona, Arkansas, Louisiana, Oklahoma, Texas, West Virginia, and Tennessee. *See* http://chghospitals.com/locations/.

whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

53. Plaintiffs will fairly and adequately protect the interests of the Rule 23 Class Members and have retained counsel experienced and competent in the field of contract, compensation, and class action litigation. Plaintiffs have no interest that is contrary to or in conflict with the interests of the members of the Rule 23 Classes.

54. A class action is superior to individual adjudication of the claims at issue in this controversy, since the claims are substantially similar and since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual members of the Rule 23 Classes may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the class to individually seek redress for the wrongs done to them. Management of this suit as a class action will serve judicial economy.

55. Questions of law and fact common to the Rule 23 Classes predominate over questions that may affect only individuals because Cornerstone has acted on grounds generally applicable to all class members. Among the common questions of law and fact common to Plaintiffs and other members of the Rule 23 Classes are:

    a. whether agreements existed pursuant to which Defendants were to pay an hourly wage to Plaintiffs and to members of the class for each hour of their work;

    b. whether Defendants failed to pay Plaintiffs and members of the class for all hours worked as a result of its automatic deduction of half an hour or one hour meal period per shift, notwithstanding the fact that Plaintiffs and class members regularly performed compensable work during such meal breaks;

    c. whether Defendants engaged in a continuing policy, pattern or practice of failing to pay Plaintiffs and the class members for all hours worked;

    d. whether Defendants breached and continue to breach the employment agreements between it and the Plaintiffs and class members;

e.  whether Defendants are liable for damages claimed hereunder, including but not limited to unpaid meal break time worked, attorneys' fees and costs.

56. Plaintiffs' claims are typical of the claims of the Rule 23 Classes. Plaintiffs, like all other class members, were subject to Cornerstone's policy and practice of automatically deducting half an hour of pay per shift worked even though Plaintiffs performed compensable work throughout their shift. Plaintiffs and each class member have been damaged and are entitled to recovery by reason of the Cornerstone's policies and practices. Class action treatment will allow class members to litigate their claims in a manner that is fair to all parties involved, free of fear of retaliation, and efficient for those parties and for the judicial system.

57. The Rule 23 Class members are defined as:

> **Nurses employed at all Cornerstone Arizona, Arkansas, Louisiana, Oklahoma, Texas, West Virginia, and Tennessee locations to provide direct patient care at any time during each states' applicable common law statutory period before this Complaint was filed up to the present who, as a result of Defendants' practice of automatically deducting 30 minutes from each shift worked and not paying for same, did not receive all of the straight time pay at their contractual hourly rate to which they were entitled in the weeks of their employment in which said nurses worked forty (40) or fewer hours per week.[4]**

### VIII. DAMAGES SOUGHT

A. <u>FLSA Collective Action Damages</u>.

58. Plaintiffs and Collective Action Members are entitled to recover their unpaid overtime compensation.

59. Plaintiffs and Collective Action Members are also entitled to an amount equal to all of their unpaid overtime compensation as liquidated damages. 29 U.S.C. § 207 and 216(b).

60. Plaintiffs and Collective Action Members are also entitled to recover their attorney's fees and costs as provided for by the FLSA. 29 U.S.C. § 216(b).

---

[4] Each state shall constitute a separate Rule 23 class subject to the identical pay practice.

17

B.  Rule 23 Class Action Damages.

61. Plaintiffs and Rule 23 Class members are entitled to recover all damages incurred by them due to Defendants' breach of the employment agreements, specifically for half-an-hour of pay per shift worked in non-overtime weeks at their then-applicable contractual hourly rate.

62. Plaintiffs and Rule 23 Class members are also entitled to recover their attorney's fees and costs incurred in prosecuting their claims for damages due to Defendants' breach of their employment agreements.

63. Plaintiffs and Rule 23 Class members are also entitled to prejudgment and post-judgment interest.

## IX.  PRAYER

A.  FLSA COLLECTIVE ACTION RELIEF — OVERTIME

For the foregoing reasons, Plaintiffs respectfully request judgment to be entered against Defendants, jointly and severally, awarding Plaintiffs and the FLSA Class members:

1. overtime compensation for all unpaid overtime hours worked in excess of forty (40) in a week at the rate of one and one-half times their regular rates of pay;

2. an amount equal to the sum of the unpaid overtime compensation, as liquidated damages allowed under the FLSA;

3. reasonable attorney's fees, costs and expenses of this action as provided for by the FLSA;

4. pre-judgment and post judgment interest at the highest rates allowed by law on all damages; and

5. such other and further relief, at law or in equity, to which Plaintiffs and the FLSA Class members may be entitled.

B.  RULE 23 RELIEF FOR EACH STATE LAW CLAIMS

Plaintiffs further respectfully request judgment to be entered against Defendants, jointly and severally, awarding Plaintiffs and the Rule 23 Class members:

1. compensation for all unpaid hours worked in non-overtime weeks at their then-applicable hourly rates;

2. reasonable attorney's fees, costs and expenses of this action;

3. pre-judgment and post judgment interest at the highest rates allowed by law on all damages; and

4. such other and further relief, at law or in equity, to which Plaintiffs and the Rule 23 Class members be entitled.

Respectfully submitted,

SHELLIST | LAZARZ | SLOBIN LLP


By: */s/ Todd Slobin*
    Todd Slobin
    Texas Bar No. 24002953
    Fed. I.D. No. 22701
    tslobin@eeoc.net
    Ricardo J. Prieto
    Texas Bar No. 24062947
    Fed. I.D. No. 1001658
    rprieto@eeoc.net
    11 Greenway Plaza, Suite 1515
    Houston, Texas 77046
    Telephone: (713) 621-2277
    Facsimile: (713) 621-0993

&

BARON & BUDD, P.C.


By: */s/ Melinda Arbuckle*
    Melinda Arbuckle
    Texas Bar No. 24080773
    Fed. I.D. No. 2629125
    marbuckl@baronbudd.com
    3102 Oak Lawn Avenue, Suite 1100

Dallas, Texas 75219
Telephone: (214) 521-3605
Facsimile: (214) 520-1181

ATTORNEYS FOR PLAINTIFFS
& CLASS MEMBERS